UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:21-cv-24433-JLK/Becerra

MOMODOU FES ROGERS,

    Petitioner,

v.

GARRETT RIPA, *et al.*,

    Respondents.

_____/

## REPORT AND RECOMMENDATION ON
## PETITION FOR WRIT OF HABEAS CORPUS

**THIS CAUSE** came before the Court upon Petitioner Momodou Fes Rogers' ("Petitioner") Verified Petition for Writ of Habeas Corpus. ECF No. [1]. Respondents Garret J. Ripa ("Ripa"), Tae D. Johnson ("Johnson"), Alejandro Mayorkas ('Mayorkas"), and Merrick B. Garland ("Garland") (collectively "Respondents") filed a Response in Opposition to the Petition (the "Response"). ECF No. [11]. Petitioner subsequently filed a Traverse (the "Reply"). ECF No. [13]. The Parties appeared for oral argument on this matter. ECF No. [17]. Pursuant to the Court's request, the Parties submitted supplemental filings. ECF Nos. [18], [23]. Upon due consideration of the Petition, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that the Petition for Writ of Habeas Corpus, ECF No. [1], be **GRANTED IN PART AND DENIED IN PART**.[1]

---

[1] On December 26, 2021, Petitioner filed a Motion for Expedited Consideration and for Order to Show Cause, requesting an expedited consideration of this case based on the

## I. BACKGROUND

Plaintiff is a Sierra Leone national who escaped his country in the 1990s "during the country's decade-long civil war" after armed rebels invaded his home, stabbed him repeatedly, "brutally raped his sisters within earshot of him," and carried away his father who he never heard from again. ECF No. [1] at 6. On August 3, 1999, Petitioner was admitted into the United States as a refugee and he subsequently adjusted his status to that of a lawful permanent resident in 2001. *Id.* at 7. Petitioner has since been diagnosed with Post-Traumatic Stress Disorder ("PTSD"), stemming from his experiences in his home country. *Id.*

In November 2013, New Jersey authorities charged Petitioner with theft and burglary, alleging that Petitioner stole scrap metal from a warehouse where he was formerly employed. *Id.* Thereafter, on November 19, 2016, Petitioner was convicted of theft and sentenced to five years of probation. *Id.* However, in May 2019, Petitioner's sentence was modified to three years imprisonment based on several probation violations. *Id.* On November 5, 2020, Petitioner was transferred to immigration custody based on the contention that the May 2019 sentence established removability. *Id.* On December 29, 2020, Petitioner made his first appearance in his removal proceedings and on April 10, 2021, he filed an application for asylum. *Id.* at 8. On August 6, 2021, an immigration judge ordered Petitioner removed from the United States. *Id.* at 9. An appeal of the immigration judge's order is currently pending. *Id.* In August 2021, Petitioner was moved

---

allegation that Petitioner was being unlawfully detained without a bond hearing. ECF No. [4] at 1–2. Based on Petitioner's request, the Court ordered expedited briefing.

to the Glades County Detention Center in Moore Haven, Florida. *Id.* at 10. Thereafter, in December 2021, Petitioner was moved to the Krome Detention Center in Miami, Florida, where he is currently detained. *Id.* at 12.

On December 23, 2021, Petitioner filed the instant Petition for Writ of Habeas Corpus, asserting one count for unlawful detention in violation of the Fifth Amendment and one count for unlawful detention in violation of the Immigration and Nationality Act. *Id.* at 23–24. Petitioner requests immediate release from immigration custody, or in the alternative, a bond hearing with the burden of proof to be placed on the Government. *Id.* at 25. In addition, Petitioner requests attorneys' fees and costs under the Equal Access to Justice Act. *Id.*

In their Response, Respondents first argue that Petitioner is not entitled to release or a bond hearing because the Supreme Court has conclusively affirmed the constitutionality of mandatory detention pending removal. ECF No. [11] at 5. Second, Respondents argue that habeas relief is not warranted because "the fact that Petitioner has been in detention for just over a year does not indicate that a constitutional violation has occurred." *Id.* at 7–9. Third, Respondents argue that if the Court concludes that Petitioner's detention exceeds Constitutional limits, the bond hearing should take place before an immigration judge where the burden of proof should be placed on Petitioner. *Id.* at 9–14.

In his Reply, Petitioner re-asserts that mandatory detention can only be imposed after a bond hearing. ECF No. [13] at 1–2. Moreover, Petitioner maintains that the constitutionality of mandatory detention does not foreclose a detainee's right to seek

habeas relief. *Id.* at 2. Petitioner further argues that his fourteen-month detention is unreasonable because he has been litigating his immigration case in good faith and to demonstrate that he continues to fear a return to Sierra Leone. *Id.* at 3. Finally, Petitioner argues that because he seeks habeas relief, the Government should bear the burden of proof in any bond hearing. *Id.* at 4–6.

On January 6, 2022, the undersigned held oral argument on this matter. ECF No. [17]. At the conclusion of the hearing, the Court requested that Petitioner submit a supplemental filing reflecting the timeline of the underlying criminal matters, and that the Government submit a supplemental filing indicating the average time it takes for the Board of Immigration Appeals (the "BIA") to issue a decision. In his Notice of Supplemental Filing, Petitioner clarifies that he was convicted of theft and sentenced to five years' probation in 2016 pursuant to two different indictments. ECF Nos. [18] at 1; [18-3]; [18-4]. Thereafter, on May 24, 2019, Petitioner was found guilty of committing various probation violations, and as such, his probation was terminated, and a three-year term of imprisonment was imposed. ECF Nos. [18-2], [18-3]. In addition, it appears that on October 21, 2019, Petitioner was sentenced to four years' imprisonment on two 2018 indictments and one 2019 indictment. ECF Nos. [18-4]–[18-6]. The public defender who has represented Petitioner in his criminal cases submitted a letter, stating that Petitioner was paroled on all of his charges on November 5, 2020, and that his parole will expire on December 17, 2023. ECF No. [18-1]. Thus, if Petitioner were released from Respondents' custody, he would be subject to monitoring by a New Jersey parole officer. *Id.*

Finally, as part of their Notice of Supplemental Information, Respondents submitted

the declaration of Lamont Taylor, a program analyst with the Department of Justice's Executive Office for Immigration Review. ECF No. [23]. Mr. Taylor states that he analyzed "the average processing time for the BIA to adjudicate an appeal of an Immigration Judge's (IJ) decision from FY2020 through FY2021." ECF No. [23-1] ¶ 6. Mr. Taylor identified that the BIA took an average of 214.05 days for non-citizens in detention, and 648.74 days for non-citizens not in detention. *Id.* ¶ 8.

## II.   ANALYSIS

Under the Immigration Nationality Act (the "INA"), "'[t]he Attorney General shall take into custody any alien who' is removable from this country because he has been convicted of one of a specified set of crimes." *Demore v. Kim*, 538 U.S. 510, 513 (2003) (alteration supplied) (quoting 8 U.S.C. § 1226(c)). As set forth above, in 2019, Petitioner was sentenced to a term of imprisonment based on various supervised release violations. *See* ECF No. [18]. Upon receiving parole on November 5, 2020, Petitioner was transferred to Respondents' custody and subjected to mandatory pre-removal detention pursuant to Section 1226(c). ECF No. [18-1]. The instant matter stems from the fact that Petitioner has never had a detention hearing despite having been in Respondents' custody for over one year. *See* ECF No. [1].

### A. The Court Has Jurisdiction Over The Instant Petition.

The threshold issue before the Court is whether Petitioner is entitled to seek habeas relief. Under 28 U.S.C. § 2241, a district court may grant habeas relief to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). However, Congress has imposed limits on the scope of habeas review within

5

the immigration context. *See, e.g.*, *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1983 (2020) (concluding that a statute that limits habeas review in an immigration case is constitutional). Pertinent here, a district court's jurisdiction to review a detention determination made under 8 U.S.C. § 1226 is limited as follows:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). This statutory limitation on judicial review does *not* bar a constitutional challenge to the length of pre-removal detention. *Demore*, 538 U.S. at 517 ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail.").

In this case, Petitioner does not dispute that he is subject to Section 1226(c)'s mandatory detention provision. Furthermore, Petitioner does not dispute that this mandatory provision has been deemed constitutional by the Supreme Court. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 846–47 (2018). Instead, Petitioner argues that because he has been in Respondents' custody over one year, his prolonged pre-removal detention is unconstitutional and warrants, at a minimum, a detention hearing. *See* ECF No. [13] at 3.

The Supreme Court in *Jennings* considered whether Section 1226 requires that aliens "be given a bond hearing every six months and that detention beyond the initial 6–month period is permitted only if the Government proves by clear and convincing evidence that further detention is justified." *Id.* at 839. Although the Court concluded that Section

1226 did not impose a six-month limitation on detention, it declined to consider whether prolonged pre-removal detention becomes, at some point, unconstitutional. *Id.* at 851. Thus, *Jennings* does not stand for the proposition, as the Government proposes, that indefinite pre-removal detention is constitutional, nor that an alien subject to prolonged pre-removal detention is foreclosed from seeking any judicial recourse. There is simply no support for Respondents' position that the constitutionality of mandatory detention under Section 1226(c) precludes Petitioner from seeking habeas relief. Instead, the law is clear that district courts have jurisdiction to review constitutional challenges to prolonged detention under Section 1226(c). *See Demore*, 538 U.S. at 517 ("[F]ederal courts have jurisdiction to review a constitutional challenge to § 1226(c)."). Accordingly, the Court has jurisdiction to hear the instant matter.

### B. Petitioner Is Entitled To A Pre-Removal Detention Hearing.

Having concluded that the Court has jurisdiction over the instant Petition, the Court must now determine whether Petitioner's pre-removal detention has been unconstitutionally prolonged. The Fifth Amendment, which applies to aliens, provides that "[n]o person shall be . . . . deprived of life, liberty, or property without due process of law." U.S. Const. amend. V; *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). Thus, aliens are entitled to due process of law in deportation proceedings. *Demore*, 538 U.S. at 523.

In *Demore*, the Supreme Court considered whether an alien's mandatory pre-

7

removal detention under Section 1226(c) constituted a due process violation. *Id.* at 513–14. The Court concluded that a six-month detention under Section 1226(c) was constitutional because "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 558–59. The Court relied on the data provided by the Executive Office of Immigration Review, which reflected that Section 1226(c) detention lasted "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530. Thus, the Court explained that this brief and limited detention was constitutional because, as a practical matter, it is a necessary aspect of the deportation process. *Id.* at 523. In his concurrence, Justice Kennedy emphasized the importance of a temporal limitation on pre-removal detention, stating that if an alien's "continued detention became unreasonable or unjustified," the alien could be entitled to "an individualized determination as to his risk of flight and dangerousness." *Id.* at 532.

Here, Respondents' argument that "*Demore* compels this Court to conclude [that] Petitioner's detention is constitutional" misses the mark. *See* ECF No. [11] at 6. The Supreme Court in *Demore* was faced with an as-applied challenge to the constitutionality of an alien's pre-removal detention. Based on the limited nature of pre-removal detention in that case, the Court concluded that no due process violation resulted. However, the Supreme Court did not address the issue before this Court now, namely whether pre-removal detention in excess of one year and in the absence of a detention hearing runs afoul of the Fifth Amendment.

The Eleventh Circuit Court of Appeals' decision in *Sopo v. United States Attorney General*, 825 F.3d 1199 (11th Cir. 2016), is instructive on this point.[2] The Court in *Sopo* identified a non-exhaustive list of factors to be considered by district courts in determining whether an alien's pre-removal detention under Section 1226(c) has been unreasonably prolonged. *Id.* at 1217. Specifically, the Court enumerated the following factors: (1) "the amount of time that the criminal alien has been in detention without a bond hearing"; (2) "why the removal proceedings have become protracted"; (3) "whether it will be possible to remove the criminal alien after there is a final order of removal"; (4) "whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable"; and (5) "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention"; (6) "the total length of the detention"; (7) "the foreseeability of proceedings concluding in the near future (or the likely duration of future detention)"; (8) "the period of the detention compared to the criminal sentence"; (9) "the promptness (or delay) of the immigration authorities or the detainee"; and (10) "the likelihood that the proceedings will culminate in a final removal order." *Id.* at 1217–18 (quotations and citations omitted). Since *Jennings*, courts across the country have continued to employ a fact-based analysis in determining whether the prolonged nature of pre-removal detention pursuant to Section 1226 necessitates a

---

[2] Although *Sopo* was abrogated by *Jennings* to the extent it concluded that Section 1226(c) implicitly required a detention hearing, it remains persuasive authority in determining whether prolonged pre-removal detention passes constitutional muster. In sum, although *Jennings* rejected a statutory challenge to Section 1226, it did not "foreclose as-applied challenges—that is, constitutional challenges to applications of the statute." *Nielsen v. Preap*, 139 S. Ct. 954, 972 (2019).

detention hearing. *See, e.g.*, *Hamilton v. Acosta*, No. 20-21318-CV, 2020 WL 3036782, at *3–6 (S.D. Fla. May 8, 2020), *report and recommendation adopted*, 2020 WL 3035350 (S.D. Fla. June 4, 2020) (conducting an as-applied analysis to a constitutional challenge to pre-removal detention under Section 1226); *Villaescusa-Rios v. Choate*, No. 20-CV-03187-CMA, 2021 WL 269766, at *1 (D. Colo. Jan. 27, 2021) (analyzing whether the length of an alien's pre-removal detention was unconstitutional based on the facts and circumstances of his case); *Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *2 (N.D. Cal. Jan. 25, 2019) (noting that "the few cases that have considered detention under Section 1226(c) post-*Jennings* have concluded that the decision depends on the individual circumstances of each case").

In evaluating Petitioner's circumstances, the undersigned finds that he is entitled to a detention hearing. First, Petitioner has been in Respondents' custody for over one year and it appears that he will not be deported in the foreseeable future. Specifically, Petitioner has been litigating his immigration case and will not be deported until the resolution of that matter. Currently, Petitioner's appeal of the immigration judge's order has been fully briefed since November 2021, but Respondents have indicated that the BIA's average adjudication time is approximately 214 days for aliens in detention. By this metric, Petitioner could face another year of pre-removal detention without the benefit of a detention hearing. This starkly contrasts with *Demore*, where the Supreme Court determined that six months of pre-removal detention was not unconstitutional because *at that time* detention under Section 1226(c) lasted "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in

which the alien chooses to appeal." 538 U.S. at 530. The current length of Petitioner's detention coupled with the prospective length of continued detention weighs in favor of ordering a detention hearing. *See, e.g.*, *Hamilton*, 2020 WL 3036782, at *5 (noting that a one-year period of pre-removal detention under Section 1226(c) weighs in favor of granting a detention hearing); *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, No. 18-CV-1843 (NEB/ECW), 2018 WL 8495827, at *6 (D. Minn. Dec. 10, 2018) (noting that a "12-month [pre-removal] detention is within the range courts have found sufficient to require a bond hearing under the Due Process Clause").

Moreover, there is no indication that Petitioner has delayed his pre-removal proceedings. Although it appears that both Petitioner and Respondents were granted several extensions of time to comply with deadlines in the immigration case, there is no indication that either party has sought extensions for the purpose of delay. Instead, it appears that the parties have litigated the immigration case in good faith and sought extensions as necessary and as is often typical in court proceedings. Although Petitioner's first attorney failed to appear for the preliminary hearing before the immigration judge, this cannot be attributed to Petitioner, who subsequently retained a different attorney that has since complied with all deadlines and requirements established by the immigration judge. In addition, there is no indication that Petitioner is pursuing an appeal in bad faith or for the purpose of delay. Thus, Petitioner's diligence in pursuing his immigration case on the merits, in filing an asylum petition, and in timely filing an appeal of the immigration judge's order also weighs in favor of granting a detention hearing. *See, e.g.*, *Villaescusa-Rios*, 2021 WL 269766, at *3 (finding that petitioner's requests for continuances were not

a dilatory tactic because "he did so to obtain legal counsel, to allow counsel time to prepare for proceedings, and to challenge the IJ's decision to deny his application for relief from removal").

Finally, Petitioner served approximately one year of his sentence of imprisonment and was subsequently released on parole. Petitioner has been in Respondents' custody for approximately the same amount of time that he was imprisoned. Based on the statistics submitted by Respondents, Petitioner is facing approximately one more year in Respondents' custody while his appeal is pending. Petitioner is facing a period of pre-removal detention that is twice as long as his period of incarceration. Thus, this factor clearly weighs in favor of granting a detention hearing. *See, e.g.*, *Gonzalez*, 2019 WL 330906, at *5 (concluding that "[p]etitioner's civil detention will meet or exceed his detention on the underlying criminal offense, which weighs in his favor").

In sum, the Court finds that Petitioner's pre-removal detention has exceeded the brief period contemplated by the Court in *Demore*, particularly where, by Respondents' admissions, the detention will exceed the length that numerous courts have found violates the Constitution. Under these circumstances, Petitioner's continued pre-removal detention without a hearing violates his due process rights. As such, it is recommended that Petitioner receive a detention hearing.

### C. The Detention Hearing Should Take Place Before An Immigration Judge.

Having concluded that Petitioner is entitled to a detention hearing, the Court considers whether the hearing should take place in this Court, as Petitioner requests, or before an immigration judge, as Respondents suggest.

As previously noted, Section 1226(c) authorizes mandatory detention for an alien who is removable based on a criminal conviction. *See* 8 U.S.C. § 1226(c). However, Section 1226(e) provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." *Id.* at § 1226(e). Thus, Section 1226(e) "precludes an alien from 'challeng[ing] a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release.'" *Jennings*, 138 S. Ct. at 841 (alteration supplied) (quoting *Demore*, 538 U.S. at 516).

Instead, the Code of Federal Regulations provides that aliens can seek review of the Attorney General's detention determination by an immigration judge. *Nielsen*, 139 S. Ct. at 960 (citing 8 C.F.R. §§ 236.1(c)(8), (d)(1), 1003.19(a), 1236.1(d)); *Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2281 (2021) (noting that an "alien may request a bond hearing in front of an immigration judge" in accordance with the Code of Federal Regulations) (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1)); *Sopo*, 825 F.3d at 1208 ("The District Director makes the initial custody determination, and the alien has the right to appeal an adverse decision to the IJ, and then to the BIA.") (citing 8 C.F.R § 1236.1(d)(1), (3)); *Aham v. Gartland*, No. 5:19-CV-46, 2020 WL 806929, at *3 n.3 (S.D. Ga. Jan. 29, 2020), *report and recommendation adopted*, 2020 WL 821005 (S.D. Ga. Feb. 18, 2020) ("Even where prolonged detention would warrant an individualized bond hearing, such as in the § 1226(c) context, . . . all that is required is an individualized bond hearing in accordance with 8 C.F.R. § 1236.1(c).") (citing *Sopo*, 825 F.3d at 1220).

Here, Section 1226 is clear and the Code of Federal Regulations dictates that a

detention hearing must take place before an immigration judge. Accordingly, the undersigned recommends that Petitioner's detention hearing take place before an immigration judge.

### D. At The Detention Hearing, The Burden Should Be On Petitioner.

The final issue before the Court is whether the burden of proof should be placed on Petitioner or on Respondents at the detention hearing. The Code of Federal Regulations provides that a *non-criminal* alien bears the burden of proof to show that he is not a danger to the community and that he is likely to appear for future proceedings. 8 C.F.R. §§ 236.1, 1236.1; *Johnson*, 141 S.Ct. at 2280–81 ("To secure release, the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings.") (citing 8 CFR §§ 236.1(c)(8), 1236.1(c)(8)).

Courts across the country are split on whether a *criminal* alien should bear the burden in a detention hearing. *See Sopo*, 825 F. 3d at 1219. Although there is no mandatory authority in this Circuit on this point, the Court finds the Eleventh Circuit's determination in *Sopo* persuasive. In *Sopo*, the Court concluded that "[l]ike non-criminal aliens, the criminal alien carries the burden of proof and must show that he is not a flight risk or danger to others." *Id.* at 1219–20. The Court reasoned that placing the burden on the government would give criminal aliens a benefit that non-criminal aliens do not have. *Id.* The Court was cognizant that "by the time a criminal alien becomes eligible for a bond hearing, he has already experienced a lengthy detention. That detention, however, occurs because Congress enacted the mandatory detention statute in § 1226(c), a statutory approach that comparatively disadvantages aliens who commit crimes over law-abiding aliens in removal

proceedings." *Id.* at 1220; *J.G. v. Warden, Irwin County Det. Ctr.*, 501 F. Supp. 3d 1331, 1347 (M.D. Ga. 2020) (noting that the criminal alien has the burden of proof in a detention hearing); *J.N.C.G. v. Warden, Stewart Det. Ctr.*, No. 4:20-CV-62-MSH, 2020 WL 5046870, at *7 (M.D. Ga. Aug. 26, 2020) (ordering detention hearing for criminal alien detained under Section 1226(c) and placing burden of proof on alien to show "he is not a flight risk or danger to others"); *Khan v. Whiddon*, No. 213CV638FTM29MRM, 2016 WL 4666513, at *7 (M.D. Fla. Sept. 7, 2016) (placing the detention hearing burden of proof on the criminal alien).

Here, Petitioner initially relies on *Sopo* in arguing that he is entitled to a detention hearing but argues that the Court should not align with *Sopo* in allocating the burden of proof. To that extent, Petitioner cites out-of-circuit case law. The Court finds no reason to depart from the Eleventh Circuit's determination in *Sopo* because, as the Court noted in that case, placing the burden of proof on Respondents in the detention hearing would give Petitioner, a criminal alien, a benefit that non-criminal aliens do not enjoy. Thus, the Court aligns with other courts in this Circuit in recommending that the burden of proof be placed on Petitioner at his detention hearing before the immigration judge.

### III.   CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that the Petition for Writ of Habeas Corpus, ECF No. [1], be **GRANTED IN PART AND DENIED IN PART**. Petitioner should be entitled to a detention hearing before an immigration judge where the burden of proof should be placed on Petitioner. Should the District Court adopt the undersigned's recommendation, Petitioner may file a request for attorneys' fees and costs

15

within ten days and Respondents may file a response ten days thereafter.

## IV. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Court within **FIVE (5) DAYS** of being served with a copy of this Report and Recommendation. The undersigned has shortened the objection period in this case given the expedited nature of this matter. At the hearing before the undersigned, the Parties indicated that they did not object to a shortened objection period.

Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on January 22, 2022.

_____
JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE